**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF NEW YORK**

**FAGE DAIRY INDUSTRY, S.A., FAGE USA DAIRY INDUSTRY, INC., and FAGE LUXEMBOURG S.Á.R.L.,**

**Plaintiffs,**

**v.**

**GENERAL MILLS, INC. and GENERAL MILLS IP HOLDINGS II, LLC,**

**Defendants.**

**Civil Action No. 06:11-CV-01174-(DEP) (N.D.N.Y.) (Lead Case)**

**GENERAL MILLS, INC. and GENERAL MILLS IP HOLDINGS II, LLC,**

**Plaintiffs,**

**v.**

**FAGE DAIRY INDUSTRY, S.A., FAGE USA DAIRY INDUSTRY, INC., FAGE USA HOLDINGS, INC., FAGE USA CORP., and FAGE LUXEMBOURG S.Á.R.L.,**

**Defendants.**

**Civil Action No. 06:12-CV-0920 (DEP) (N.D.N.Y.) (Member Case)**
**JURY TRIAL DEMANDED**

**MEMORANDUM OF LAW IN OPPOSITION TO GENERAL MILLS' MOTION TO EXCLUDE THE EXPERT TESTIMONY OF RONALD R. BUTTERS, Ph.D.**

# TABLE OF CONTENTS

INTRODUCTION ........................................ 1

BACKGROUND ........................................ 2

ARGUMENT ........................................ 4

I. Dr. Butters' Conclusions Are Reliable ........................................ 6

A. Dr. Butters Satisfies the Standard for Linguistic Expertise ........................................ 6

B. Dr. Butters' Conclusions Are Grounded in the Science of Linguistics ........................................ 7

II. Dr. Butters' Testimony Is Relevant and Will Help the Jury ........................................ 11

III. Dr. Butters' Conclusions Are Neither Cumulative Nor Misleading ........................................ 14

CONCLUSION ........................................ 15

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Alfa Corp. v. OAO Alfa Bank*,
475 F. Supp. 2d 357 (S.D.N.Y. 2007)....5, 7, 10, 12

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
303 F.3d 256 (2d Cir. 2002)....5, 6

*Aveda Corp. v. Evita Mktg., Inc.*,
706 F. Supp. 1419 (D. Minn. 1989)....12

*Bacardi & Co. v. New York Lighter Co.*,
No. 97-CV-7140, 2000 WL 298915 (E.D.N.Y. Mar. 15, 2000)....4

*Bausch & Lomb, Inc. v. Alcon Laboratories, Inc.*,
79 F. Supp. 2d 252 (W.D.N.Y. 2000)....13

*Bell v. Harley Davidson Motor Co.*,
539 F. Supp. 2d 1249 (S.D. Cal. 2008)....6

*Borawick v. Shay*,
68 F.3d 597 (2d Cir. 1995)....5

*Candlehouse, Inc. v. Town of Vestal*,
No. 3:11-CV-00093, 2013 WL 1867114 (N.D.N.Y. May 3, 2013)....13

*Citizens Fin. Grp., Inc. v. Citizens Nat'l Bank of Evans City*,
383 F.3d 110 (3d Cir. 2004)....12

*Classic Foods Int'l Corp. v. Kettle Foods Inc.*,
468 F. Supp. 2d 1181 (C.D. Cal. 2007)....6

*ConAgra, Inc. v. George A. Hormel & Co.*,
784 F. Supp. 700 (D. Neb. 1992)....12

*Cunningham v. Michelin North Am., Inc.*,
No. 04-1144-T/An., 2006 WL 5499281 (W.D. Tenn. Aug. 17, 2006)....9

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993)....4, 6, 9, 11

*E.E.O.C. v. Morgan Stanley & Co.*,
324 F. Supp. 2d 451 (S.D.N.Y. 2004)....5

*Eastern Air Lines, Inc. v. New York Air Lines*,
559 F. Supp. 1270 (S.D.N.Y. 1983)....12

*Edwards Lifesciences Corp. v. VigiLanz Corp.*,
94 U.S.P.Q.2d 1399, 2010 WL 1514315 (T.T.A.B. 2010) ....................12

*Infinity Broad. Corp. v. Greater Boston Radio, II, Inc.*,
No. 93-11161-WF, 1993 WL 343679 (D. Mass. Aug. 18, 1993) ....................14

*Kumho Tire Co. v. Carmichael*,
526 U.S. 137 (1999) ....................4

*Lappe v. Am. Honda Motor Co., Inc.*,
857 F. Supp. 223 (N.D.N.Y. 1994) ....................6

*Le Blume Imp. Co. v. Coty*,
293 F. 344 (2d Cir. 1923) ....................14

*Louis Vuitton Malletier v. Dooney & Bourke, Inc.*,
525 F. Supp. 2d 558 (S.D.N.Y. 2007) ....................12

*MacQuesten Gen. Contracting, Inc. v. HCE, Inc.*,
No. 99 Civ. 8598, 2002 WL 31388716 (S.D.N.Y. Oct. 22, 2002) ....................7, 11

*Malaco v. Leaf AB v. Promotion in Motion, Inc.*,
287 F. Supp. 2d 355 (S.D.N.Y. 2003) ....................14

*McCullock v. H.B. Fuller Co.*,
61 F.3d 1038 (2d Cir. 1995) ....................4, 5, 11

*Mister Twister, Inc. v. JenEm Corp.*,
710 F. Supp. 202 (S.D. Ohio 1989) ....................12

*Nimley v. City of New York*,
414 F.3d 381 (2d Cir. 2005) ....................13

*Quality Inns Int'l, Inc. v. McDonald's Corp.*,
695 F. Supp. 198 (D. Md. 1988) ....................12

*Resorts Int'l Inc. v. Greate Bay Hotel & Casino, Inc.*,
No. 90-3057, 1991 WL 352487 (D.N.J. Jan. 18, 1991) ....................12

*Rock v. Arkansas*,
483 U.S. 44 (1987) ....................6

*Sanofi-Aventis v. Advancis Pharm. Corp.*,
453 F. Supp. 2d 834 (D. Del. 2006) ....................12

*Steak n Shake Co. v. Burger King Corp.*,
323 F. Supp. 2d 983 (E.D. Mo. 2004) ....................6, 13

*Stix Prods., Inc. v. United Merchants & Mfrs., Inc.*,
295 F. Supp. 479 (S.D.N.Y. 1968)....................14

*U.S. Info. Sys., Inc. v. Int'l Bhd. of Elec. Workers Local Union No. 3, AFL-CIO*,
313 F. Supp. 2d 213 (S.D.N.Y. 2004)....................5

*United States v. Lumpkin*,
192 F.3d 280 (2d Cir. 1999)....................5

*United States v. Romano*,
859 F. Supp. 2d 445 (E.D.N.Y. 2012) ....................9

*Victoria's Secret Stores Brand Mgmt., Inc. v. Sexy Hair Concepts, LLC*,
No. 07 Civ. 5804 (GEL), 2009 WL 959775 (S.D.N.Y. 2009)....................12

*Virginia Tech Found. Inc. v. Family Grp. Ltd. V*,
666 F. Supp. 856 (W.D. Va. 1987) ....................14

*Whirlpool Props., Inc. v. LG Elecs. U.S.A. Inc.*,
No. 1:03-CV-414, 2005 WL 3088339 (W.D. Mich. Nov. 17, 2005) ....................6

*Yellow Cab. Co. of Sacramento v. Yellow Cab Co. of Elk Grove, Inc.*,
No. CIV. S-02-0704 (FCD), 2006 WL 5516883 (E.D. Cal. Dec. 11, 2006) ....................11, 12

*Zipee Corp. v. U.S. Postal Serv.*,
140 F. Supp. 2d 1084 (D. Or. 2000) ....................12

**OTHER AUTHORITIES**

Fed. R. Evid. 702, Advisory Comm. Note....................5

Fed. R. Evid. 702 ....................5, 6, 12, 13

Fed. R. Evid. 702(a)....................1

Fed. R. Evid. 702(b)-(d)....................2

Janet E. Ainsworth, *Linguistics as a Knowledgable Domain in the Law*, 54 DRAKE L. REV. 651 (2006).................... passim

Michel Tuan Pham and Gita Venkataramani Johar, *Contingent Processes of Source Identification*, 24 J. OF CONSUMER RES. 249 (1997) ....................8

Ronald R. Butters, *Trademarks and Other Proprietary Terms*, *in* DIMENSIONS OF FORENSIC LINGUISTICS 231 (John and M. Teresa Turell eds., 2008)....................10

FAGE Dairy Industry S.A., FAGE USA Dairy Industry, Inc., FAGE USA Holdings, Inc., FAGE USA Corp., and FAGE Luxembourg S.á.r.l. (collectively, "FAGE") respectfully submit this memorandum of law in opposition to the motion to exclude the testimony and report of Ronald R. Butters, Ph.D. by General Mills, Inc. and General Mills IP Holdings II, LLC ("General Mills").

## INTRODUCTION

An issue of fact central to this litigation is whether, as alleged by General Mills, use of the mark FAGE Total for Greek strained yogurt is likely to cause confusion among consumers with Total ready-to-eat cereal. To assist the jury in making this factual determination, FAGE will offer at trial the testimony of Professor Ronald R. Butters, Ph.D., a distinguished expert in English language linguistics and Professor Emeritus of English & Cultural Anthropology at Duke University. Dr. Butters' testimony will help the jury determine how speakers of American English use and perceive the word "total"—an issue he has thoroughly analyzed using objective data and his specialized knowledge and training in the field of linguistics. After considering how the word "total" is used in general and in the context of the parties' marks and products, Dr. Butters has concluded that the linguistic features that distinguish the function of the word *total* as used in connection with FAGE's yogurt far outweigh any features that would lead to linguistic confusion with the use of the word *total* in connection with General Mills' cereal. Dr. Butters' linguistic opinion is relevant and helpful to the jury, and it should be readily admitted.

General Mills concedes that Dr. Ronald Butters is "indisputably a credentialed linguist" and that linguistics is a specialized academic discipline. *See* Memorandum in Support of General Mills' Motion to Exclude Testimony of Dr. Butters [DE 184-2] ("GM Br.") at 6. Having conceded Dr. Butters' expertise under Fed. R. Evid. 702(a), General Mills constructs a baseless attack on his methodology, contending that his opinion should be backed by consumer

research or other objective survey data. Dr. Butters is not an expert in marketing or consumer research (which is why his opinions are not cumulative with the evidence of market research experts which FAGE offers). The methodology employed by Dr. Butters in formulating his opinions is that of a linguist. Evaluated against the proper framework of the field of linguistics, Dr. Butters' expert report is the product of reliable principles and methods, and those principles and methods have been reliably applied to the facts of this case. Thus, the requirements of Rule 702(b)-(d) have been satisfied.

Courts in this and other circuits permit expert linguists to testify in trademark cases. General Mills does not cite a single case in support of its position that linguists should be excluded from testifying as experts in trademark disputes. General Mills failed to obtain a rebuttal expert opinion in linguistics and has failed to show that Dr. Butters' expert report is not relevant to the issue of strength of the mark "Total" in the context of the *Polaroid* likelihood of confusion analysis required in this case. This Court should deny the motion.

**BACKGROUND**

Dr. Butters is a renowned expert in the field of linguistics. He has over forty years of professional experience in teaching and research at Duke University as Professor Emeritus of English & Cultural Anthropology, focusing primarily on linguistic analysis of contemporary American English. In his time at Duke University, Dr. Butters served as the Chair of the English Department, Chair of the Linguistics Program, Co-Editor of the International Journal of Speech, Language and Law, and he was also President of the International Association of Forensic Linguists. *See* Expert Report of Dr. Ronald R. Butters ("Butters Rpt.") dated December 21, 2012 at Ex. B (attached as Exhibit 1 to the Supporting Declaration of Kevin P. McCormick, Esq. ("McCormick Decl.")). Dr. Butters received his doctorate in English with a concentration in linguistics from the University of Iowa. *Id.*

As his curriculum vitae indicates, Dr. Butters has been actively engaged in the linguistics field as a university professor, researcher, editor, and frequent lecturer over his forty-year career. *Id.* Dr. Butters has written numerous books, as well as peer-reviewed articles and monographs, which have been published in academic and professional journals in the field of linguistics. In fact, he was the editor of peer-reviewed scientific publications of the American Dialect Society for over twenty-five years. *Id.* at 5. He has lectured and taught courses on a variety of issues relating to contemporary American English. *Id.* at Exhibit B. Finally, he has also written on the specific topic of linguistic confusion and trademarks. *Id.* at 5; Deposition Transcript of Dr. Ronald R. Butters dated February 20, 2013 ("Butters Tr.") at 11:13-13:7 (attached as Exhibit 2 to the McCormick Decl.).

Dr. Butters is also a consultant in the field of linguistics and has provided testimony in numerous trademark infringement actions in over eighteen states before both federal and state courts and proceedings before the Trademark Trial and Appeal Board. *See* Ex. 1, Butters Rpt. at Ex. B.

The Butters report details the methodology Dr. Butters used in forming his linguistic opinions in this matter. *See* Ex. 1, Butters Rpt. at Exhibit A; Ex. 2, Butters Tr. at 31:15-33:18; 48:7-24. Dr. Butters applied accepted scientific linguistics principles in comparing the use of the term *total* by the parties in the marks at issue in the context of their display on the parties' products, packaging, and advertising. *See* Ex. 1, Butters Rpt. at 5-6. Specifically, Dr. Butters carefully analyzed the terms at issue using recognized linguistic disciplines of phonology, orthography, semiotics, pragmatics, semantics, graphemics, morphology, syntax, lexicology, lexicography, discourse analysis, psycholinguistics, and sociolinguistics to determine the meaning(s) conveyed by the marks and the effect of the colors, print, style, size, location,

typeface, and overall presentation of the two terms on consumers' understanding of the word "total" as used by the parties in this case in packaging and advertising. *Id.* at 6; Ex. 2, Butters Tr. at 56:3-59:3. In sum, he analyzed the "schema" of each mark to determine the semantic link between source and content in a consumer's memory, which in turn helps assess the cues available at cognitive retrieval of the to-be-recollected marks, packaging, and advertising. His report details his independent professional application of linguistic principles to determine the semantic link, if any, between the marks at issue. His final conclusion that no linguistic confusion is likely is based on the cumulative effect of the linguistic features or cues that affect the linguistic distinctiveness (or lack of distinctiveness) of General Mills' mark Total for cereal. *See* Ex. 1, Butters Rpt. at 7-31; Ex. 2, Butters Tr. at 53:9-54:15.

As demonstrated herein, General Mills' criticisms of Dr. Butters reflect a misunderstanding of the field of linguistics[1] and, at best, arguments that go to the weight of his testimony but not its admissibility.

**ARGUMENT**

"The Second Circuit has adopted a rather broad standard for the admissibility of expert witness testimony." *Bacardi & Co. v. New York Lighter Co.*, No. 97-CV-7140, 2000 WL 298915, *2 (E.D.N.Y. Mar. 15, 2000) (citing *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1043 (2d Cir. 1995)).[2] Admissibility of expert testimony focuses on the reliability of the proffered witness and the general acceptance of the methodology within the relevant field. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 594 (1993). To be deemed admissible, expert testimony must be both relevant and reliable. *Id.*; *Kumho Tire Co. v. Carmichael*, 526 U.S. 137,

---

1 General Mills is not alone in this misunderstanding. *See* Janet E. Ainsworth, *Linguistics as a Knowledgable Domain in the Law*, 54 DRAKE L. REV. 651, 652 (2006) (noting that lawyers "still have little idea what linguistics is about and fail to fully appreciate the ways in which its insights could be useful or illuminating to law").

2 Copies of all unreported cases are attached as Exhibit 3 to the McCormick Decl.

152 (1999). It is also necessary for courts to take into account an expert's experience, training, and/or education when determining whether an expert is qualified to render an opinion. *McCullock*, 61 F.3d at 1043.

A witness qualified as an expert will be painsermitted to testify if his testimony "will assist the trier of fact to understand the evidence or to determine a fact in issue." *United States v. Lumpkin*, 192 F.3d 280, 289 (2d Cir. 1999) (quoting Fed. R. Evid. 702). The Second Circuit has emphasized the broad discretion of the trial court to admit expert testimony:

> First,... *Daubert* reinforces the idea that there should be a presumption of admissibility of evidence. Second, it emphasizes the need for flexibility in assessing whether evidence is admissible. Rather than using rigid "safeguards" for determining whether testimony should be admitted, the Court's approach is to permit the trial judge to weigh the various considerations pertinent to the issue in question. Third, *Daubert* allows for the admissibility of scientific evidence, even if not generally accepted in the relevant scientific community, provided its reliability has independent support. Finally, the Court expressed its faith in the power of the adversary system to test "shaky but admissible" evidence, and advanced a bias in favor of admitting evidence short of that solidly and indisputably proven to be reliable.

*Borawick v. Shay*, 68 F.3d 597, 610 (2d Cir. 1995).

"A minor flaw in an expert's reasoning or a slight modification of an otherwise reliable method will not render an expert's opinion *per se* inadmissible." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002). Rather, "the rejection of expert testimony is the exception rather than the rule." *Alfa Corp. v. OAO Alfa Bank*, 475 F. Supp. 2d 357, 360 (S.D.N.Y. 2007) (quoting Fed. R. Evid. 702, Advisory Committee's Note); *see E.E.O.C. v. Morgan Stanley & Co.*, 324 F. Supp. 2d 451, 456 (S.D.N.Y. 2004); *U.S. Info. Sys., Inc. v. Int'l Bhd. of Elec. Workers Local Union No. 3, AFL-CIO*, 313 F. Supp. 2d 213, 226 (S.D.N.Y. 2004). The Second Circuit's presumption of admissibility of expert testimony is based on the recognition that "our adversary system provides the necessary tools for challenging reliable,

albeit debatable, expert testimony." *Amorgianos*, 303 F.3d at 267. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert,* 509 U.S. at 596 (citing *Rock v. Arkansas*, 483 U.S. 44, 61 (1987)).

Finally, any doubts as to whether the expert's testimony will be useful should be resolved in favor of admissibility. *Lappe v. Am. Honda Motor Co., Inc.*, 857 F. Supp. 223, 236 (N.D.N.Y. 1994).

## I. DR. BUTTERS' CONCLUSIONS ARE RELIABLE

### A. Dr. Butters Satisfies the Standard for Linguistic Expertise

General Mills admits that Dr. Butters is "indisputably a credentialed linguist." GM Br. at 6. Therefore, the first test of reliability under Rule 702 has been satisfied.

Moreover, Dr. Butters has been recognized as an expert by numerous courts and has offered opinions in trademark infringement actions on issues of strength of mark, likelihood of confusion, word history, dilution, putatively scandalous marks, secondary meaning, and genericism using these same methodologies. *See, e.g., Bell v. Harley Davidson Motor Co.*, 539 F. Supp. 2d 1249, 1257 (S.D. Cal. 2008) (noting that Butters' conclusion in his expert report was consistent with the evidence concerning fair use of the mark); *Classic Foods Int'l Corp. v. Kettle Foods Inc.*, 468 F. Supp. 2d 1181, 1190, 1191 (C.D. Cal. 2007) (considering Butters' expert report and survey of media usage regarding a genericism determination); *Whirlpool Props., Inc. v. LG Elecs. U.S.A. Inc.*, No. 1:03-CV-414, 2005 WL 3088339, at *9-10 (W.D. Mich. Nov. 17, 2005) (considering Butters' expert report on the issue of secondary meaning); *Steak n Shake Co. v. Burger King Corp.*, 323 F. Supp. 2d 983, 987, 993 (E.D. Mo. 2004) ("Although [Butters'] testimony is not determinative on the issue of whether the term merits trademark protection, since he was speaking as a historian and linguist—not as a trademark expert—his testimony

provides helpful guidance as to how people use the term 'steakburger' and the roots of this generic term."). Neither Dr. Butters' credentials as a linguistic expert nor the admissibility of his linguistic opinions in trademark cases have ever been called into question by a court. *See* Ex. 2, Butters Tr. at 25:2-13.

**B. Dr. Butters' Conclusions Are Grounded in the Science of Linguistics**

In formulating his opinion as to the likelihood of linguistic confusion, Dr. Butters assessed the perception and understanding of the word "*total*" in light of many linguistic disciplines, including phonology, orthography, semiotic, pragmatics, and semantics. Each of Dr. Butters' conclusions is tied to the principles regarding the study of words in each discipline.[3] *See* Ainsworth, *supra* note 1, at 652-54 (discussing the multi-faceted study of linguistics).

General Mills does not dispute the linguistic methodologies used by Dr. Butters. Rather, General Mills seeks to subject Dr. Butters to a different standard—one grounded in statistical analysis of consumer survey data. Dr. Butters is not an expert in marketing or shopping behavior and he did not conduct a consumer survey, therefore, General Mills' complaints regarding the lack of mathematical precision in Dr. Butters' conclusion are misplaced. *See Alfa Corp*., 475 F. Supp. 2d at 366; *see also* Ainsworth, *supra* note 1, at 656-59 (noting that linguistics "is of a different order and nature than the truth sought by a molecular chemist or geneticist" but is nonetheless a science).

[3] General Mills takes issue with the fact that Dr. Butters reviewed more iterations of the General Mills "TOTAL" mark than the FAGE packaging. GM Br. at 3-4. This argument goes to the weight of the evidence and not the admissibility of Dr. Butters' testimony. *MacQuesten Gen. Contracting, Inc. v. HCE, Inc.*, No. 99 Civ. 8598, 2002 WL 31388716, at *2 (S.D.N.Y. Oct. 22, 2002). Moreover, Dr. Butters reviewed varying iterations of Total cereal boxes over a longer period of time because, as his report makes clear, General Mills has not advertised the mark in a consistent manner, which affects the linguistic analysis of the term, whereas FAGE's advertising has been consistent in its representation of the FAGE Total mark. *See* Ex. 1, Butters Rpt. at 11-12. Further, given that the FAGE labels General Mills complains were excluded from Butters' study include Greek-style lettering, Dr. Butters' analysis of the impact of the English/Greek language implications as to those labels would be even more dramatic. GM Br. at 3-4; Ex. 1, Butters Rpt. at 7-9, 11-12.

Mathematical precision is not the standard in linguistics study. Instead, linguistic experts formulate opinions based on historical information and etymology sufficient to impart a general sense of a word's underlying meanings and associations. Analysis of these underlying meanings, associations, and linguistic uses of a common English word used as a trademark is useful and has a cognizable bearing on consumer perception and recollection. Specifically, these considerations bear on the ability of a mark to create a strong semantic link between the product's source and encoding in a consumer's memory, as well as the overlap between the cues that trigger retrieval of the information and the to-be-recollected information (i.e., the semantic analysis of how seeing FAGE Total yogurt will be perceived, remembered, and recalled and whether cues are strong enough to trigger associations to Total cereal). Stored knowledge of a senior mark is accessible in a consumer's memory (along with other uses of the same common English word), and, therefore, available for retrieval; failure to retrieve the senior user's mark using the junior user's mark as a stimulus is an indication of the lack of brand strength of the senior mark and the lack of linguistic confusion. *See* Michel Tuan Pham and Gita Venkataramani Johar, *Contingent Processes of Source Identification*, 24 J. OF CONSUMER RES. 249, 250 (1997) (attached as Exhibit 4 to the McCormick Decl.).

In attacking the reliability of Dr. Butters' linguistic methodologies, General Mills resorts to mischaracterization of his testimony and conclusions. General Mills oversimplifies Dr. Butters' analysis by confining it to only four "aspects of the parties' use of 'TOTAL.'" *See* GM Br. at 4. However, Dr. Butters explains that linguistic analysis is based on roughly thirteen subfields, at least twelve of which were relevant to his assessment of the likelihood of linguistic confusion. Ex. 1, Butters Rpt. at 6-7; Ex. 2, Butters Tr. at. 56:3-59:3; *see also* Ainsworth, *supra* note 1, at 635-54. Further, within each subfield, different analysis of linguistic features inform

his methodology consistent with the principles in his discipline rather than his "personal impressions." *See, e.g.*, Ex. 1, Butters Rpt. at 9-13; Ex. 2, Butters Tr. at 94:10-97:4; *see also* Ainsworth, *supra* note 1, at 658 (discussing linguistics as a science and noting that it "involves a tight set of rules . . . that aren't merely observations") (internal quotations and citations omitted).

General Mills argues that Dr. Butters' report is "entirely subjective," but General Mills is mistaken. The fundamental characteristic of linguistic analysis is the empirical analysis of the usage of words within the specific framework of relevant subfields discussed in Dr. Butters' report, as well as more traditional empirical data such as dictionary definitions. As stated by Dr. Butters, "People who purchase ready-to-eat cereal do not randomly walk through stores, impulsively picking out items and placing them in their shopping baskets." GM Br. at 5. Dr. Butters cites as support for this conclusion empirical data in the form of General Mills' marketing analysis reports. *See* Ex. 2, Butters Tr. at 106:3-107:25.

Furthermore, even an expert analysis with a subjective component will meet the reliability threshold if, as here, the expert relied on well-established industry standards and publications. *United States v. Romano*, 859 F. Supp. 2d 445, 458 (E.D.N.Y. 2012) (acknowledging that expert testimony regarding coin valuation involved a subjective component but allowing the testimony as reliable nonetheless given the expert's use of widely accepted standards and publications); *see also Cunningham v. Michelin North Am., Inc.*, No. 04-1144-T/An., 2006 WL 5499281, at *4 (W.D. Tenn. Aug. 17, 2006) (stating that "*Daubert* does not flatly prohibit the admission of an expert's subjective opinions" and finding expert testimony regarding the adequacy of a product's safety features reliable based on the expert's visual inspection, "personal knowledge, training and expertise garnered over his 35 years in the tire manufacturing industry").

General Mills also mischaracterizes Dr. Butters' testimony concerning the need for empirical data in linguistics analysis. Dr. Butters explained in response to a complex hypothetical regarding the need for analysis of empirical data that empirical data would be helpful to inform his opinion as he was given no other facts to respond to General Mills' counsel's vague hypothetical. GM Br. at 7-8; Ex. 2, Butters Tr. at 73:15-74:2 ("The linguistics, what we are concerned with is the knowledge of – of speakers and the use of language by speaker. So it's impossible for me to answer your question because it doesn't relate to specific empirical data and it doesn't ask a question that's normally asked by a linguistic except insofar as it might be related to empirical data."); *see also* Ronald R. Butters, *Trademarks and Other Proprietary Terms*, *in* DIMENSIONS OF FORENSIC LINGUISTICS 231-47 (John and M. Teresa Turell eds., 2008) (discussing the value of linguistic expert testimony with respect to the issue of likelihood of confusion) (attached as Exhibit 5 to the McCormick Decl.).

In *Alfa Corp.*, the court explained the distinctions between consumer-research or survey based expert opinions and opinions which linguistics experts can provide in trademark cases. 475 F. Supp. at 364. There, a linguistics expert relied on a leading treatise, an Internet article, an informal consultation with a colleague, and his background and his personal experience as a native Russian speaker, translator, and professor of Russian to provide an expert opinion on the meaning of a Russian word to English speakers. *Id.* at 361, 363. It was immaterial that the expert had not reviewed the pleadings or conducted any independent investigation because his opinion was offered to provide an "academic view" of the issue in the context of the likelihood of confusion analysis. *Id.* at 364. Similarly, Dr. Butters' report and testimony provide a linguistic view of the meaning of the term "total" and, whether, given the meaning of term, use

of the term in connection with cereal and yogurt in the context of the parties' packaging and labeling is likely to lead to linguistic confusion.

In sum, General Mills' arguments go to the weight, not the admissibility, of Dr. Butters' testimony. "Disputes as to the strength of his credentials, faults in his use of [a certain theory] as a methodology, or lack of textual authority for his opinion, go to the weight, not the admissibility, of his testimony." *McCullock*, 61 F.3d at 1044; *see also MacQuesten Gen. Contracting, Inc. v. HCE, Inc.*, No. 99 Civ. 8598, 2002 WL 31388716, at *2 (S.D.N.Y. Oct. 22, 2002) ("[A] claim that the assumptions relied on by an expert are unfounded is generally an argument that goes to the weight rather than the admissibility of the evidence." ); *see also Yellow Cab. Co. of Sacramento v. Yellow Cab Co. of Elk Grove, Inc.*, No. CIV. S-02-0704 (FCD), 2006 WL 5516883, at *2 (E.D. Cal. Dec. 11, 2006) ("Plaintiff proffers no evidence to challenge Dr. Farrell's methodology or the reliability of his opinions. Instead, plaintiff's *counsel* makes a variety of arguments based upon *her* beliefs regarding the bases for Dr. Farrell's testimony. Attorney argument is not adequate to raise a *Daubert* issue, and thus, there is no basis for exclusion of Dr. Farrell's testimony under *Daubert.*").

General Mills will have adequate opportunity to cross-examine Dr. Butters and challenge his conclusions and underlying assumptions at trial. *See Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

## II. DR. BUTTERS' TESTIMONY IS RELEVANT AND WILL HELP THE JURY

General Mills contends without benefit of case or record citation that Dr. Butters' linguistic opinions are irrelevant. *See* GM Br. at 11-16. General Mills is wrong. Numerous courts in this and other circuits have allowed the testimony of linguistics experts in trademark disputes, finding it both relevant and helpful to the trier of fact. *See* Ainsworth, *supra* note 1, at

662 ("One type of case in which linguists routinely testify is trademark litigation, often with both sides offering linguistic testimony."); *see, e.g.*, *Citizens Fin. Grp., Inc. v. Citizens Nat'l Bank of Evans City*, 383 F.3d 110 (3d Cir. 2004) (expert testimony regarding use of abbreviations); *Alfa Corp.*, 475 F. Supp. 2d at 364 (finding a linguistics expert's opinions on transliteration of the mark at issue sufficiently reliable and consistent with Rule 702); *Victoria's Secret Stores Brand Mgmt., Inc. v. Sexy Hair Concepts, LLC*, No. 07 Civ. 5804 (GEL), 2009 WL 959775, at *8 (S.D.N.Y. 2009) (admitting expert testimony of a professional linguist in the context of a TTAB appeal); *Yellow Cab Co.*, 2006 WL 5516883, at *2-3; *Edwards Lifesciences Corp. v. VigiLanz Corp.*, 94 U.S.P.Q.2d 1399, 2010 WL 1514315, at *1 (T.T.A.B. 2010).[4, 5]

Dr. Butters' report is not, as General Mills contends, seeking to instruct the jury as to the proper application of the law. *See* Ainsworth, *supra* note 1, at 664 (stating that jurors "are quite capable of evaluating scientific expert evidence fairly and without giving it excessive weight in their deliberations" and it is an "erroneous belief" to assume that a linguist has no expertise

---

4 *See also Sanofi-Aventis v. Advancis Pharm. Corp.*, 453 F. Supp. 2d 834, 849 (D. Del. 2006) (testimony of linguistics expert considered as part of the likelihood of confusion analysis); *Zipee Corp. v. U.S. Postal Serv.*, 140 F. Supp. 2d 1084, 1086 (D. Or. 2000) (linguistics expert declarations considered in secondary meaning analysis); *ConAgra, Inc. v. George A. Hormel & Co.*, 784 F. Supp. 700, 716-17 (D. Neb. 1992) (testimony of two linguistics experts considered as part of the likelihood of confusion analysis); *Resorts Int'l Inc. v. Greate Bay Hotel & Casino, Inc.*, No. 90-3057, 1991 WL 352487, at *10-11 (D.N.J. Jan. 18, 1991) (linguistics expert report considered as part of the likelihood of confusion analysis); *Mister Twister, Inc. v. JenEm Corp.*, 710 F. Supp. 202, 204 (S.D. Ohio 1989) (testimony of linguistics expert relied on as part of the likelihood of confusion analysis); *Aveda Corp. v. Evita Mktg., Inc.*, 706 F. Supp. 1419, 1423, 1428-29 (D. Minn. 1989) (linguistics expert affidavit considered as part of the likelihood of confusion analysis); *Quality Inns Int'l, Inc. v. McDonald's Corp.*, 695 F. Supp. 198, 215 (D. Md. 1988) (testimony of linguistics expert considered as part of genericism determination); *Eastern Air Lines, Inc. v. New York Air Lines*, 559 F. Supp. 1270, 1274, 1275 (S.D.N.Y. 1983) (testimony of expert on lexicography considered as part of genericism determination).

5 In contrast, General Mills' reliance on *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558 (S.D.N.Y. 2007), is misplaced. Noting that "excluding expert testimony is the exception rather than the rule," 525 F. Supp. 2d at 562, Judge Scheindlin approved a Special Master's report that excluded an expert report and testimony of an engineer in color science—not a linguist—because the "highly technical report and testimony on the similarity of colors between the parties' handbags would not be helpful to the jury because the jury members can observe for themselves whether Dooney & Bourke's mark is confusingly similar to Louis Vuitton's Multicolored Monogram mark ... without the expert's digital photography... technical jargon and colorimeter approximation." 525 F. Supp. 2d at 570. Such testimony is vastly different from that offered by Dr. Butters, which as noted above, is of a type that courts have recognized as helpful in trademark cases. Moreover, because the mark at issue in that case did not involve the colors of the bags, the Court was rightly concerned that evidence showing use of similar colors could result in prejudice. *Id.* at 571.

beyond that possessed by jurors themselves"). The inapposite cases General Mills relies on demonstrate this point. *Nimley v. City of New York* involved a forensic pathologist offering to testify about the credibility of police officers' statements. 414 F.3d 381, 398 (2d Cir. 2005) ("[E]xpert opinions that constitute evaluations of witness credibility . . . are inadmissible under Rule 702."). In both *Bausch & Lomb* and *Candlehouse*, the experts—one of whom was a lawyer—offered opinions on the meaning of legal terms. *Bausch & Lomb, Inc. v. Alcon Laboratories, Inc.*, 79 F. Supp. 2d 252, 255 (W.D.N.Y. 2000) ("[T]estimony that is designed to instruct the jury on the applicable law is not admissible . . . ."); *Candlehouse, Inc. v. Town of Vestal*, No. 3:11-CV-00093, 2013 WL 1867114, at *21-22 (N.D.N.Y. May 3, 2013). None of Dr. Butters' opinions regarding the linguistic analysis of the word "*total*" as used by the parties has anything to do with how the jury should interpret trademark law. Ex. 2, Butters Tr. at 134:8-137:9 ("I don't speak to legal issues").[6]

Dr. Butters testified that he made no legal conclusions and that his conclusions were informed by the principles of linguistics, which involve, in part, the influence of the shared culture of language. *See* Ex. 1, Butters Rpt. at 6-7 (psycholinguistics, for example, consider "the species-universal linguistic abilities of the individual human being"); Ex. 2, Butters Tr. at 134:8-137:9; *see also Steak n Shake*, 323 F. Supp. 2d at 987, 993 ("Although [Butters'] testimony is not determinative on the issue of whether the term merits trademark protection, since he was speaking as a historian and linguist—not as a trademark expert—his testimony provides helpful guidance as to how people use the term 'steakburger' and the roots of this generic term.").

[6] General Mills wrongly attempts to force trademark definitions on Dr. Butters' analysis; Dr. Butters makes clear that his analysis of the words at issue determine the meaning associated with words pursuant to linguistics methodology. *See* Ex. 1, Butters Rpt. at 26 (discussing the weakness of the word *total* based on its dictionary definition and commercial context rather than an analysis of the "strength" of General Mills' "TOTAL" mark in a trademark context); *see also* Ex. 2, Butters Tr. at 134:8-137:9.

General Mills cites no case in which a court excluded a linguist expert from testifying in a trademark dispute. None of the cases it cites hold that jurors should be precluded from hearing linguistic evidence to aid their determination of whether "ordinary prudent purchasers" are likely to be confused by the use of the word "total" in different contexts. All of the cases cited by General Mills which discuss linguistic evidence in trademark disputes (GM Br. 14-15) address the persuasive weight afforded it by judges sitting as the finders of fact.[7] None of these authorities provide support for General Mills' argument that jurors have some sort of "innate ability" to assess likelihood of linguistic confusion that precludes Dr. Butters from testifying.

## III. DR. BUTTERS' CONCLUSIONS ARE NEITHER CUMULATIVE NOR MISLEADING

Finally, General Mills argues that Dr. Butters' testimony should be excluded on the grounds that it is misleading and cumulative. This argument is frivolous.

Despite General Mills' protestations, there is nothing misleading about Dr. Butters' testimony. That General Mills finds it unhelpful to its case does not make it misleading. Similarly, the mere fact that FAGE's survey expert and linguistics experts may both ultimately help the jury decide the likelihood of confusion issue does not make their testimony cumulative. These experts approach the issue from two different disciplines and with completely different testimony. There is nothing cumulative about their testimony.

---

[7] *See Infinity Broad. Corp. v. Greater Boston Radio, II, Inc.*, No. 93-11161-WF, 1993 WL 343679, at *6 (D. Mass. Aug. 18, 1993) (report and recommendation on preliminary injunction); *Virginia Tech Found. Inc. v. Family Grp. Ltd. V*, 666 F. Supp. 856, 857 (W.D. Va. 1987) (preliminary injunction); *Malaco v. Leaf AB v. Promotion in Motion, Inc.*, 287 F. Supp. 2d 355, 371-72 (S.D.N.Y. 2003) (summary judgment); *Stix Prods., Inc. v. United Merchants & Mfrs., Inc.*, 295 F. Supp. 479, 489 (S.D.N.Y. 1968) (nonjury findings of fact); *Le Blume Imp. Co. v. Coty*, 293 F. 344, 359 (2d Cir. 1923) (affirming judge's injunction without any discussion as to the admissibility of linguistic expert opinions). Citing many of these same cases, General Mills makes the sweeping assertion that "courts in similar cases have observed [that] 'ordinarily prudent purchasers' do not apply linguistic expertise to their buying decisions." GM Br. at 15. That, however, is not what these cases hold. It is also a nonsensical statement, as ordinary purchasers would not have "linguistic expertise" to apply, but that does not mean the linguistic characteristics of the marks do not have an effect on how consumers perceive and understand terms in a marketing context.

## CONCLUSION

Based on the foregoing, FAGE respectfully requests that the Court deny as baseless General Mills' motion to preclude Dr. Butters' reliable and relevant expert report.

Date: June 25, 2013

Respectfully submitted,

/s/ Virginia R. Richard, Esq.

Virginia R. Richard, Esq. (Bar Number 106806)
WINSTON & STRAWN LLP
200 Park Avenue
New York, New York 10166
Telephone: (212) 294-4707
Facsimile: (212) 294-4700
vrichard@winston.com

Ashley D. Hayes
Hancock, Estabrook, LLP
100 Madison Street, Suite 1500
Syracuse, NY 13202
(315) 565-4526
Fax:
(315) 565-4626
Email: ahayes@hancocklaw.com

Kimball R. Anderson, Esq. (Bar No. 104378)
Kevin P. McCormick, Esq. (Bar No. 602983)
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601-9703
Telephone: (312) 558-5858
Facsimile: (312) 558-5700
kanderson@winston.com
kmccormick@winston.com

*Attorneys for FAGE Dairy Industry, S.A., FAGE USA Dairy Industry, Inc., FAGE USA Holdings, Inc., FAGE USA Corp. and FAGE Luxembourg S.Á.R.L.*