UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **FAGE DAIRY INDUSTRY, S.A., FAGE USA DAIRY INDUSTRY, INC., and FAGE LUXEMBOURG S.Á.R.L.,**<br>**Plaintiffs,**<br>v.<br>**GENERAL MILLS, INC., and GENERAL MILLS IP HOLDINGS II, LLC,**<br>**Defendants.** | **Civil Action No. 6:11-CV-1174 (DEP)**<br>**(Lead Case)** |
| **GENERAL MILLS, INC., and GENERAL MILLS IP HOLDINGS II, LLC,**<br>**Plaintiffs,**<br>v.<br>**FAGE DAIRY INDUSTRY, S.A.; FAGE USA DAIRY INDUSTRY, INC., and FAGE USA HOLDINGS, INC., FAGE USA, CORP., and FAGE LUXEMBOURG S.Á.R.L.,**<br>**Defendants.** | **Civil Action No. 6:12-CV-0920 (DEP)**<br>**(Member Case)** |

**REPLY IN SUPPORT OF GENERAL MILLS' MOTION TO
EXCLUDE THE TESTIMONY OF FAGE EXPERT RONALD BUTTERS**

## TABLE OF CONTENTS

                                                               **Page**

INTRODUCTION ..................................................................................................................1

ARGUMENT.........................................................................................................................2

      I.      DR. BUTTERS DOES NOT APPLY THE "LEVEL OF INTELLECTUAL RIGOR THAT CHARACTERIZES THE PRACTICE OF AN EXPERT" IN LINGUISTICS. ..................................................2

      II.     DR. BUTTERS IMPROPERLY "UNDERTAKES TO TELL THE JURY WHAT RESULT TO REACH." ...................................................................5

      III.    FAGE'S CASE CITATIONS SUPPORT THE EXCLUSION OF DR. BUTTERS' TESTIMONY IN THIS CASE. ...........................................6

      IV.    DR. BUTTERS' TESTIMONY IS LIKELY TO CONFUSE OR MISLEAD THE JURY. .....................................................................8

CONCLUSION......................................................................................................................9

# INTRODUCTION

Fage's defense of Dr. Butters is based on the premise that the jury cannot assess the parties' use of the mark "TOTAL" without him. In Fage's view, jurors lack the "linguistic expertise" to appreciate "the linguistic characteristics of the [parties'] marks" and their "effect on how consumers perceive and understand terms in a marketing context." (Opp. at 14. n.7.) Fage similarly asserts that jurors have no "'innate ability' to assess likelihood of linguistic confusion." (Opp. at 14.) But General Mills' burden at trial is not to prove "linguistic confusion" – it is to prove that Fage's use of "Total" is "likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a), 15 U.S.C. § 1125(a)(1)(A). Put simply, the liability standard is likelihood of *consumer* confusion, not "linguistic confusion." *Mushroom Markers, Inc. v. R.G. Barry Corp.*, 580 F.2d 44, 47 (2d Cir. 1978) ("[T]he crucial issue in an action for trademark infringement or unfair competition is whether there is any likelihood that an appreciable number of *ordinarily prudent purchasers* are likely to be misled, or indeed simply confused, as to the source of the goods in question" (emphasis added)).

As English-speaking "ordinarily prudent purchasers," jurors are qualified to assess the consumer confusion likely to be caused by Fage's use of the "TOTAL" mark. Indeed, Dr. Butters' own analysis draws heavily from his experience as a consumer. (*See, e.g.,* Mem. Ex. A, Dkt. No. 184-1, Butters Dep. at 106:13-14 ("[T]his is my experience in going into stores"), 133:19-134:7 (visited five different stores while preparing his report).) While Fage claims that Butters "applied accepted scientific linguistics principles" (Opp. at 3), his opinions fall well short of that standard.

*Daubert* requires "statements constituting a ***scientific*** explanation [to] be capable of empirical test." *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 592 (1993) (quoting C. Hempel, *Philosophy of Natural Science* 49 (1966)) (emphasis added).) Dr. Butters' opinions cannot be

1

tested, though, because they are not empirical. Dr. Butters never consulted any consumers (other than himself) to see whether their reactions were consistent with his predictions. The only "empirical data" that Fage can muster – the only "objective evidence" that Dr. Butters considered in his analysis – is a General Mills marketing report and a few dictionary entries. (Opp. at 9.) By contrast, the authors of the article "Contingent Processes of Source Identification," which Fage cites in its Opposition, tested their hypotheses by conducting two experiments with actual consumers. (Opp. Ex. 4, Dkt. No. 215-5, Michel Tuan Pham & Gita Venkataramani Johar, "Contingent Processes of Source Identification," 24 *J. Consumer Research* 249 (1997) ("Two experiments examine portions of the framework, and experiment 2 introduces a new methodology for decomposing multiple processes").)

Because Dr. Butters' opinions derive from his own subjective impressions – which by definition cannot be empirically verified – his testimony cannot be considered "scientific" under *Daubert*. Ultimately, his *ipse dixit* is his only support. (*See, e.g.,* Mem. Ex. A, Dkt. No. 184-1, Butters Dep. at 102:15-17 ("This is shared cultural knowledge that you have, that I have and it's not really disputable.").

For these reasons, as well as the additional reasons set forth below and in General Mills' opening Memorandum, Dr. Butters' testimony should be excluded under Federal Rules of Evidence 702 and 403 as unreliable, unhelpful, and likely to confuse and mislead the jury.

## ARGUMENT

**I.   DR. BUTTERS DOES NOT APPLY THE "LEVEL OF INTELLECTUAL RIGOR THAT CHARACTERIZES THE PRACTICE OF AN EXPERT" IN LINGUISTICS.[1]**

General Mills agrees that linguistic science, properly conducted, "involves a tight set of rules . . . that aren't merely observations." (Opp. at 9.) Dr. Butters, however, did not follow "a

---

[1] *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

tight set of rules." When asked which linguistic subfields he focused on in his report, Dr. Butters demurred:

> I have some problems with just what you mean by focus on. . . .[A]s I just testified[,] all of these except historical linguistics are at least marginally related to the issues that I raised, but the methodology here is not to say, okay, here's the phonology, here's the graphemics, here's the morphology.
>
> So . . . in a very real sense I don't focus on them in the sense that . . . there's a methodological approach that says we have to go down this laundry list. In one way or another . . . these are aspects of linguistics that inform my report.

(Mem. Ex. A, Dkt. No., 184-1, Butters Dep. at 58:13-59:3.)

Similarly, when asked point-blank what methodology one uses for analyzing linguistic confusion in a trademark context, he did not articulate a "tight set of rules." Instead, he referred vaguely to the "large literature on the [psycho-]linguistic confusion of words in general." (*Id.* at 48:7-25.) Dr. Butters' inability to articulate his methods in a precise and repeatable manner signifies an unscientific thought process. *See LinkCo, Inc. v. Fujitsu Ltd.*, No. 00 Civ. 7242(SAS), 2002 WL 1585551, at *4 (S.D.N.Y. July 16, 2002) ("Without good explanations, courts cannot assess the reliability of any conclusion drawn by an expert, even if he possesses relevant experience."); *see also Matthews v. First Revenue Assurance LLC*, No. 00 C 3711, 2001 WL 864272, at *2 (N.D. Ill. July 31, 2001) ("If neither the expert nor the proffering party discloses what reasoning and methodology led to the conclusions in the report, the Court has no way to satisfy [its gatekeeping] obligation").

Dr. Butters' methodological laxity leads to errors that Fage cannot credibly explain. For example, Fage tries to defend his arbitrary and asymmetrical selection of product packaging by claiming that "General Mills has not advertised the mark in a consistent manner . . . whereas FAGE's advertising has been consistent." (Opp. at 7 n.3.) But this only begs the question whether Fage's U.S. product labeling has in fact been "consistent." A comparison of the designs

Dr. Butters ignored (top)[2] with the designs he reviewed (bottom)[3] shows that Fage's pre- and post-2006 labels are, if anything, consistently *different* from each other:



Moreover, Fage does not attempt to reconcile Dr. Butters' concession that the TOTAL® trademark is "venerable" with his opinion that it "just doesn't mean very much."  Nor does Fage attempt to justify his reliance on inapposite marketing examples where "total" merely serves as a descriptive amplifier, and is not the brand name of the product itself.

Fage addresses the dearth of data underlying Butters' opinions by arguing that General Mills simply demands too much from him.  Fage does not dispute that none of Dr. Butters' opinions are based on feedback from actual consumers. (*See, e.g.,* Mem. Ex. A, Dkt. No. 184-1, Butters Dep. at 74:11-12 ("I did not rely upon consumer research"), 88:14-18 (conducted no consumer research "to determine what actual consumers say is the most eye catching portion" of Fage's packaging).   Instead, Fage complains that General Mills "seeks to subject Butters to a different standard – one grounded in statistical analysis" and "mathematical precision." (Opp. at

---

[2] From left to right, serial nos. 76016813, 76016812, 76016810, and 75597292 (retrieved July 2, 2013 from www.uspto.gov).

[3] From left to right, serial nos. 77037793, 77037808, 77037835, and 77037851(retrieved July 2, 2013 from www.uspto.gov).

4

7-8.) But Dr. Butters need not transform himself into a statistician or mathematician in order to base his opinions on empirical evidence. He need only apply what Fage correctly calls "[t]he fundamental characteristic of linguistic analysis [–] the empirical analysis of the usage of words." (Opp. at 9.) The absence of empirical support for Dr. Butters' opinions confirms that he did not "employ[ ] in the courtroom the degree of intellectual rigor practiced by an expert in [linguistics]." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). His testimony should therefore be excluded.

## II. DR. BUTTERS IMPROPERLY "UNDERTAKES TO TELL THE JURY WHAT RESULT TO REACH."[4]

Fage contends that "[n]one of Dr. Butters'[s] opinions regarding the linguistic analysis of the word '*total*' as used by the parties has anything to do with how the jury should interpret trademark law." (Opp. at 13.) And yet, Fage has not retracted any of Dr. Butters' opinions that deliberately ***incorporate*** the "likelihood of confusion" standard on which the jury will be instructed:

- "[T]he cumulative effect of the linguistic features that distinguish the function of the word *total* [in the parties' trademarks] . . . far outweighs any features that would lead to linguistic confusion" (Doc. 184-1 Mem. Ex. B, Dkt. No. 184-1, Butters Rpt. at 4);

- "[I]t is unlikely that [the] consumer would confuse FAGE's use with the semantically weak common word *total* as used by GENERAL MILLS" (*id.* at 27);

- "[C]onsiderations of the communicative context . . . compel the conclusion that the likelihood of linguistic confusion of the two companies' use of *total* is highly unlikely" (*id.* at 30); and finally,

- "[L]inguistic confusion is unlikely for consumers of yogurt and cereal." (*Id.* at 30-31.)

---

[4] *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994).

5

Dr. Butters' repeated use of the words "likely," "unlikely," "likelihood," "consumer," and "confusion" is not by accident.  Knowing that liability ultimately depends on the "likelihood of consumer confusion," he would urge the jury to adopt *his* interpretation and substitute *his* judgment for theirs.  Dr. Butters thereby crosses the line from "ultimate factual conclusions" to "opinions phrased in terms of inadequately explored legal criteria that would merely tell the jury what result to reach."  *Haritatos v. Hasbro, Inc.*, No. 6:05-CV-930, 2007 WL 3124626, at *2 (N.D.N.Y. Oct. 23, 2007) (internal quotes omitted) (quoting *United States v. Bilzerian,* 926 F.2d 1285, 1294 (2d Cir. 1991), and *U.S. v. Scop,* 846 F.2d 135, 142 (2d Cir. 1988)).  On this basis as well, his testimony should be excluded.

## III.  FAGE'S CASE CITATIONS SUPPORT THE EXCLUSION OF DR. BUTTERS' TESTIMONY IN THIS CASE.

"For an expert's testimony to be admissible under Rule [702] . . . it must be directed to matters within the witness'[s] scientific, technical, or specialized knowledge and not to lay matters which a jury is capable of understanding and deciding without the expert's help."  *Andrews v. Metro N. Commuter R.R. Co.*, 882 F.2d 705, 708 (2d Cir. 1989).  Fage has not demonstrated that linguistic expertise is necessary for the jury to assess the likelihood of confusion caused by Fage's TOTAL yogurt.  The presumption remains that jurors "can see for themselves. . . .  There is no need for an expert to tell them what they can see."  *Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 644 (S.D.N.Y. 2007).

The cases Fage cites in Dr. Butters' defense only highlight the irrelevance of his linguistic expertise to this case.  For example, Fage discusses the *Steak n Shake* case, in which the court found Dr. Butters' testimony on the etymology and historical usage of the term "steakburger" to be helpful.  *Steak n Shake Co. v. Burger King Corp.*, 323 F. Supp. 2d 983, 993 (2004).  The origins and past uses of words are not generally known by lay people, so those were

6

appropriate topics for Dr. Butters to lend his expertise.  In this case, however, ***Butters does not address historical usage and etymology***.  Instead, he addresses a topic squarely within the layman's wheelhouse:  the comparison and interpretation of product branding from the viewpoint of the "ordinarily prudent purchaser."  *Steak n Shake* is therefore entirely inapposite.

*Alfa Corp. v. OAO Alfa Bank*, 475 F. Supp. 2d 357 (S.D.N.Y. 2007), is also readily distinguished from this case.  In *Alfa Corp.*, a Russian/English interpreter testified on the proper transliteration of a Russian word into English.  *Id.* at 361.  As in *Steak n Shake*, the expert's testimony concerned subject matter that an American lay jury would know little or nothing about.  In the present case, however, Dr. Butters proposes to explain to an American jury "how speakers of American English use and perceive the word 'total'" – a subject that, by definition, American jurors already understand.  For *Alfa* to be apposite, Dr. Butters would have to be testifying about a word in a language the jury does not speak (and Dr. Butters would have to be a scholar of that foreign language).

Other cases addressing linguistic evidence have followed the same rule as *Alfa* and *Steak n Shake*:  if the issue is "beyond lay ken," the evidence is considered; but if the issue is what an ordinary consumer would think, it is disregarded as irrelevant. *Compare Yellow Cab Co. of Sacramento v. Yellow Cab Co. of Elk Grove, Inc.*, No. CIV. S-02-0704 FCD DAD, 2006 WL 5516883, at *2 (E.D. Cal. Dec. 11, 2006) (linguist's testimony "as to how people use a certain term and the 'roots' of the term" allowed, citing *Steak n Shake*), *with Stix Prods., Inc. v. United Merchants & Mfrs., Inc.,* 295 F. Supp. 479, 489 (S.D.N.Y. 1968) ("That stress patterns in a compound phrase may convey generic meaning to a linguist, a scientific language expert, does not necessarily make the phrase generic as far as the consuming public is concerned").

Finally, the procedural setting in virtually all of Fage's cited authorities differs from the present posture of this case. In *Steak n Shake*, Dr. Butters testified at a preliminary injunction hearing; accordingly, the court did not subject his testimony to *Daubert* scrutiny. *Victoria's Secret* involved a bench trial. Thus, while the court questioned whether the linguist's opinions "add[] anything to the perceptions of any sophisticated native speaker of English," it allowed his testimony because there was "no need to protect the factfinder from being overawed by 'expert' analysis." *Victoria's Secret Stores Brand Mgmt., Inc. v. Sexy Hair Concepts, LLC*, No. 07 Civ. 5804(GEL), 2009 WL 959775, at *8 n.4 (S.D.N.Y. Apr. 8, 2009). In many of Fage's cited cases, the linguist's testimony was unchallenged. *See, e.g., Citizens Fin. Group, Inc. v. Citizens Nat'l Bank of Evans City*, 383 F.3d 110, 115 (3d Cir. 2004) (appeal of *Daubert* ruling excluding survey expert, no mention of challenge to linguistic expert); *Sanofi-Aventis v. Advancis Pharm. Corp.*, 453 F. Supp. 2d 834, 849 (D. Del. 2006) (linguistic expert testimony mentioned, but not challenged); *Zipee Corp. v. U.S. Postal Serv.*, 140 F. Supp. 2d 1084, 1086 (D. Or. 2000) (stating only that "[t]he parties have submitted expert declarations from linguists and historians"); and *ConAgra, Inc. v. George A. Hormel & Co.*, 784 F. Supp. 700, 708 (D. Neb. 1992) (both parties called linguistic experts, no mention of *Daubert* challenge by either side).

In sum, *Alfa* appears to be the only case cited by Fage where a linguist survived a *Daubert* challenge and was allowed to testify before a jury. As demonstrated, however, the grounds for admitting the linguist's testimony in *Alfa* – that it concerned the transliteration of a foreign word into English – are entirely absent here.

## IV.  DR. BUTTERS' TESTIMONY IS LIKELY TO CONFUSE OR MISLEAD THE JURY.

"[A] purported expert's opinion often carries special weight with the jury[,] even when unwarranted." *Malletier*, 525 F. Supp. 2d at 562. Dr. Butters' appraisal of "how speakers of

8

American English use and perceive the word 'total'" is calculated to cause jurors who disagree with him to second-guess their own judgments as "ordinarily prudent purchasers."  Thus, whatever probative value his opinions may have is substantially outweighed by the risk that the jury will be confused or misled.  *See Candlehouse, Inc. v. Town of Vestal*, No. 3:11-CV-0093 (DEP), 2013 WL 1867114, at *21 (N.D.N.Y. May 3, 2013) ("[W]hatever minimal relevance Dr. Bransford's opinions regarding the definitions of family and the functional equivalent of a family using sociological criteria may carry, that probative value is substantially outweighed by the risk of confusion to the jury when considering her opinions . . . .");  Fed. R. Evid. 403.  His testimony should therefore be excluded.

## CONCLUSION

General Mills does not contend that "linguists should be excluded from testifying as experts in trademark disputes."  (Opp. at 2.)  Other courts have recognized that a linguist's opinion may be helpful to the jury on understanding foreign-language terms or the origins and past use of unusual terms, when those facts are disputed in the case. But Fage is unable to identify any case that supports admission of Dr. Butters' linguistic opinions here, where he proposes to substitute his own understanding of the term "total" (based in large part on his own personal, idiosyncratic experience as a consumer) for the judgment of the jurors based on their common experience.

The purpose of this motion is only to apply the standards of "good science" to Dr. Butters' opinions *in this case*.  Because Dr. Butters' opinions here do not meet those standards, his testimony should be excluded.

Dated:  July 16, 2013                                   Respectfully submitted ,

/s/ David L. Nocilly

Jerry W. Blackwell (*pro hac vice*)           David L. Nocilly, 510759
Benjamin W. Hulse (*pro hac vice*)          BOND, SCHOENECK & KING, PLLC
BLACKWELL BURKE P.A.                       One Lincoln Center
431 South Seventh Street, Suite 2500        Syracuse, New York 13202-1355
Minneapolis, Minnesota  55415                Telephone:  (315) 218-8000
Telephone:  (612) 343-3200                     dnocilly@bsk.com
blackwell@blackwellburke.com
bhulse@blackwellburke.com                   Timothy M. Kenny (*pro hac vice*)
                                                               FULBRIGHT & JAWORSKI L.L.P.
                                                               2100 IDS Center
                                                               80 South Eighth Street
                                                               Minneapolis, Minnesota 55402
                                                               Telephone: (612) 321-2800
                                                               tkenny@fulbright.com

                                                               *Attorneys for Defendants General Mills, Inc.*
                                                               *and General Mills IP Holdings II, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 16, 2003, I electronically filed the foregoing REPLY IN SUPPORT OF GENERAL MILLS' MOTION TO EXCLUDE THE TESTIMONY OF FAGE EXPERT RONALD BUTTERS with the Clerk of the District Court using the CM/ECF system, which sent notification of such filing to all counsel of record.

*s/David L. Nocilly*
_____
David L. Nocilly (510759)